AMINI TUIVAI, Plaintiff,
v.
SUIAVA PELE, aka "ALAMOANA," AMERICAN SAMOA GOVERNMENT, IMMIGRATION BOARD, AVIATA FA'ALEVAO and MAKA TUIHALAMAKA, Defendants.

High Court of American Samoa
Trial Division

CA No. 118-83

June 5, 1984


Before MURPHY, Associate Justice, Presiding, TAUANU'U, Chief Associate Judge and FAOA, Associate Judge.

Counsel: For the plaintiff, Watson & Reardon by William Reardon
For defendant Pele, Mulitauaopele Ivi
For defendants ASG, Immigration Board and Fa'alevao, Donald A.

Griesmann, Assistant Attorney General
For defendant Tuihalamaka, no appearance, default entered

This matter came on for trial on May 23rd and May 24th, 1984, before this court. The case being fully submitted was taken under advisement. The court finds, concludes and orders as follows:

## STATEMENT OF THE CASE

Article 1, section 4, of the Revised Constitution of American Samoa provides for respect for the dignity of the individual. Because this concept is obviously at issue in this case and because counsel have devoted much time and attention to the matter, the court has undertaken to address this case in somewhat more detail than perhaps would normally be expected.

Plaintiff filed a multi-count complaint alleging violation of rights pursuant to 42 U.S.C. sections 1983, 1985 and 1986, and a claim for tort. He also sought injunctive relief, mandamus and a declaration that A.S.C.A. section 41.0606 is unconstitutional.

Defendants are plaintiff's uncle, Maka Tuihalamaka ("Maka"), Suiava Pele aka Alamoana ("Suiava"). American Samoa Government ("A.S.G."), Immigration Board ("board") and Aviata Fa'alevao ("attorney general"). Contemporaneously with the commencement of this lawsuit, plaintiff with others filed a habeas corpus petition (CA No. 116-83). The decision and order entered therein on October 19, 1983, are germane to this case. Judicial notice is taken of them and a copy of them is appended.

## FACTS

The following facts are more or less undisputed. Plaintiff is a 23-year-old native citizen of the Kingdom of Tonga. He is talented and ambitious. Maka resides in the territory of American Samoa where he operates a variety of businesses including a farm; a sewing shop, an auto repair shop and a curio manufactory. He also operates a passenger boat between American Samoa and Tonga. In September of 1981 plaintiff came to this territory, sponsored by Maka.

In October 1982, after a hearing, the board granted plaintiff, along with 25 other Tongans (a total of 26) permission to remain in the territory for one year "for private employment and farm work for the sponsor's company only." Plaintiff did some work for Maka but in fact spent a good deal of time out of the territory and in the United States. Plaintiff also went into business for himself as a commercial artist. He applied for and received a business license for 1982-1983.

Through his uncle he met and became acquainted with Suiava. Suiava is a local businessman. He owns and operates snack shops. He was also employed by American Samoa Community College ("college") as a counselor. Plaintiff wanted to attend the college. Plaintiff did some painting on one of Suiava's mobile snack bars for which he neither asked for nor received payment. From time to time plaintiff would eat at Suiava's shop, sometimes on credit and occasionally borrow money from Suiava. Apparently he paid for what he ate and paid back what he borrowed.

In January 1983 plaintiff registered at the college and began to attend classes. He successfully completed the semester and registered for the summer session in June. His troubles began when he registered for the fall semester. The college pays close attention to the immigration status of its students. Officers are invited to attend registration and the registration

36

forms require immigration information. Everyone seems to be under the impression that "clearance" is required from the board for a student to attend the college. Apparently this "clearance" is often granted, as a number of aliens, mostly Western Samoans, attend the college.

At any rate, Suiava called to the attention of the college authorities plaintiff's immigration status. It was eventually determined that he had not received "clearance" from the board to attend college. He was suspended pending clarification of his immigration status.

About that time plaintiff went to the attorney general to complain that Suiava was attempting to coerce him into doing free painting in exchange for silence as to plaintiff's immigration status. A complaint to the attorney general about Suiava proved as helpful to plaintiff as would have been an appeal by Custer to the A.I.M. Political Action Committee aboout his treatment at Little Big Horn.

The attorney general immediately ordered plaintiff and Maka to appear before the board. Maka, undoubtedly sensing his nephew had committed a gaffe, quickly revoked his sponsorship and offered to send his nephew back to Tonga on his boat. By the time the boat was ready to leave, however, plaintiff had obtained counsel and filed the habeas corpus action referrred to above, which resulted in a stay of board action. Since then other board hearings have been conducted. Plaintiff has a new sponsor and has official board permission to remain in the territory until April 1985. Suiava, embarrassed by the uproar, resigned his position at the college.

## DISPUTED FACTS

As might be expected the testimony of plaintiff and Suiava differed sharply. Plaintiff claimed that Suiava promised to use his position at the college to help him get in. In return he wanted plaintiff to do free painting for him. When plaintiff made it clear he expected to be paid Suiava exposed him as not having immigration "clearance" to attend college.

Suiava denies all this. He says plaintiff was in college before he even met him. He volunteered to do a painting job for Suiava in April 1983. Suiava treated him as a member of his family and did not need him to do any painting, Suiava being a good artist himself. Even if he did point out plaintiff's immigration status, which resulted in suspension from college and near deportation, he was only doing his duty as a conscientious college counselor. He wants damages against plaintiff on a counter-claim for loss of his job.

## DISCUSSION

The truth may be somewhere between the two versions. No matter. Neither theory is actionable. Even if Suiava reported plaintiff out of spite rather than a sense of duty we know of no theory to hold Suiava liable for reporting a fact. Even if Suiava is right, he resigned voluntarily. Any loss he suffered was due to his own choice. Not every quarrel is subject to judicial resolution.

We turn now to matters perhaps of broader interest.

A curious aspect of this case is how the immigration board gets into the business of deciding who gets into college. Certainly no one should be permitted to attend the college who is not legally in the territory. But once that determination is made it is up to the college to admit or reject applicants. True, one's immigration status determines the scope of employment one may undertake in the territory. But other activities are not sub-

ject to board approval.  The alien may apply to the hospital for treatment, the library for books and the college for admission.  It is up to those institutions,  not  the  immigration board,  to determine whether  or  not  he qualified for their services.  (Notwithstanding that, the board has granted itself such authority at A.S.A.C.  section 41.0213.  Apparently it embraces Robert Browning's idea that one's reach should exceed one's grasp.)

Turning at long last to the specific issues of this case, we first note that plaintiff did not comply with the Government Tort Liability Act (A.S.C.A.  title 43, chapter 12) by filing the required claim as a prerequisite to litigation.  A.S.G.  correctly points out that such failure defects the count for tort.  Such a filing,  however,  is not required for civil rights claims under 42 U.S.C. section 1983 et seq.

The attorney general concedes,  as indeed he must,  that those statutes apply to the Territory of American Samoa.

> Every person who, under color of any statute, ordinance, reg-
> ulation,  custom or usage,  of any State or Territory . . .
> subjects  . . .  any citizen of the United States or  other
> person within the jurisdiction thereof to the deprivation of
> any rights . . .  secured by the Constitution and laws, shall
> be liable . . . . [Emphases supplied.]

The question then is of what rights was plaintiff deprived?  His right to remain in the territory?  He is still here.  He violated the terms of his authorization  to remain,  not by attending the college,  but by engaging in employment beyond the scope of the authorization,  to wit:  going into business for himself.  True,  Maka revoked his sponsorship because he perceived that the revocation was in his own best interests.  But this was not  under an order from the attorney general.  The efforts of the attorney general to remove  plaintiff  were  examined and condemned  in  CA  No.  116-83.  They amounted to an attempt,  rather than an actual deprivation.  At any event it is difficult to see what right plaintiff had to remain in the territory once the sponsor withdrew.

This  brings  us to plaintiff's next claim,  to wit:  the  sponsorship statute is unconstitutional.  A.S.C.A. section 41.0606 simply provides that aliens  remaining here must have a sponsor.  Clearly the original intention of  the statute was to provide financial responsibility for the  maintenance and potential return of aliens.  The potential for abuse is obvious.  In the first place,  there is no limitation on the number of persons one may  sponsor.  Once here,  the alien is virtually at the mercy of his sponsor, since apparently  a  sponsor  can withdraw his sponsorship at  any  time,  without cause,  and the result will be deportation of the alien.  However, potential for  abuse  does not necessarily render  a  statute  unconstitutional.  The entire  immigration act is suspect.  (See Ki v.  Immigration Board (1983) 1 A.S.R.2d  99 and other decisions of the high court.)  One can  only  express the hope that sooner or later the legislature will address this matter.

As to the plaintiff's prayers for mandamus and injunctive relief, they seem to have been resolved by the board's grant of permission to remain in the territory.

## CONCLUSIONS

1.  Title  42 U.S.C.  sections 1983 et seq.  apply in the Territory of American Samoa.  In order to proceed under those statutes it is not  necessary to file administrative claims under the government tort liability act.

38

2.    Plaintiff  failed to sustain his burden of proof in that there  is insufficient showing that he was deprived of any rights,  privileges or  immunities secured by the Constitution and laws.

3.    Plaintiff failed to sustain his burden of proof as to tortious conduct on the part of any defendant.    Furthermore, plaintiff failed to comply with the government tort claims act.

4.    Plaintiff's claims for mandamus and injunction were abandoned.   Also,  they  are rendered moot by the board's grant to plaintiff of permission to remain in the territory.

5.    Plaintiff has failed to demonstrate that A.S.C.A.   section 41.0606 violates the United States Constitution.

ORDER

Plaintiff's prayers for relief are denied.    Parties to bear their  own costs.